IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:04cr248

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| DION MONTREAL COXTON ) | |

On September 27, 2004, the grand jury returned a three-count indictment charging the Defendant, Dion Montreal Coxton, with: 1) possession of various controlled substance with the intent to distribute, and aiding and abetting said offense; 2) possession of a firearm in furtherance of a drug crime; and 3) being a convicted felon in possession of a firearm.

Presently before the Court is the Defendant's Motion to Suppress his post-arrest statements made March 11 and 12, 2004, on the grounds that the police did not properly Mirandize him. The Court held a suppression hearing on February 10, 2006. The Defendant testified that Detective Conner never advised him of his Miranda rights, and even if he did, the Detective did not re-read them during the custodial interrogation at the jail twelve hours later. The government disagreed, and offered the testimony of Officer Sherwood and Detective Conner to prove that the Defendant was properly Mirandized at his initial arrest and was reminded of and acknowledge his Miranda rights during the subsequent interrogation at the jail. The Court made several factual findings and took the matter under advisement pending a ruling on its conclusions of law. The Court agrees with government that there was no 5th amendment violation. The reasons for this ruling follow, beginning with the Court's factual findings.[1]

---

[1] To the extent Detective Conner or Officer Sherwood's testimony contradicts Coxton's, the Court found that their testimony was more credible.

1

# FINDINGS OF FACT

On March 11, 2004, at approximately 9:00 p.m., Officer Sherwood and other officers of the Charlotte-Mecklenberg Police Department stopped the vehicle in which the Defendant Dion Coxton was riding at a license checkpoint. Officer Sherwood subsequently placed him in his patrol car and Detective P.B. Conner was called to the scene after the stop revealed Coxton's possession of cocaine, cocaine base, marijuana, and a firearm.

Coxton initially told Detective Conner that he was uncertain whether he wanted a lawyer, at which point Detective Conner promptly ceased speaking with him. The detective then proceeded to speak with Raymond Watkins, the driver of the vehicle, who soon was arrested and Mirandized. Coxton then expressed a desire to speak with police. Detective Conner proceeded to read Coxton his Miranda rights from a orange pre-printed card. See Government Exhibit 1. Coxton acknowledged each right individually, expressed his desire to speak to the Detective without an attorney present, and then consented in writing to a search of his room at his mother's residence, and his room at the Value Lodge motel. See Government's Exhibit 3. He then accompanied the police to his hotel room, and thereafter was taken to the Mecklenberg County jail. Some twelve hours later, at approximately 1:30 p.m. the next day, Detective Conner and Agent Herb Lemon interviewed Coxton at the jail. Prior to interviewing Coxton, the detectives inquired whether he was represented by counsel. Upon learning that Coxton did not have an attorney, Detective Conner informed him that "he was still under Miranda...[that he] still had Miranda rights" and then asked if he would be interested in speaking with the Detectives. Coxton acknowledged that he had been read his Miranda rights the previous night and expressed a desire to speak and cooperate with the police. The substance of the conversation related to the guns and drugs found on Coxton's possession as well as $20 in counterfeit currency found at the

hotel room. See Government Exhibit 4. During the interrogation, no weapons were displayed, nor did the police make any specific promises of leniency. Nor was there any evidence that the police were coercive, or that the Defendant's ability to comprehend the situation was critically impaired.[1]

OPINION

The government bears the burden of proving by a preponderance of the evidence that a defendant was properly advised of his Miranda rights; the defendant voluntarily, knowingly, and intelligently waived those rights; and that the ensuing statement was voluntarily made. Colorado v. Connelly, 479 U.S. 157, 168-69, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). In the present case, the central issue before the Court is whether the Miranda rights given by Detective Conner were in effect when Detectives Conner and Lemon interrogated Coxton approximately twelve hours later at the Mecklenberg County jail. There is no per se rule for when police must remind a suspect of his Miranda rights and the mere elapse of time does not compromise a Miranda warning. United States v. Andaverde, 64 F.3d 1305, 1312 (9th Cir.1995); cf. United States v. Anthony, 474 F.2d 770, 773 (5th Cir.1973) ("[T]here is no requirement that an accused be continually reminded of his rights once he has intelligently waived them[.]"). Courts consistently have upheld the integrity of Miranda warnings, even in cases where a significant number of hours have elapsed. See Guam v. Dela Pena, 72 F.3d 767, 769-70 (9th Cir. 1995)(finding that a fifteen-hour delay between waiver and statement does not require new

---

[1] The Court has observed during both the instant hearing and the jury selection process that the Defendant is quite capable of comprehending his situation, both now and during his arrest. During his testimony at the suppression hearing, Coxton exhibited a clear memory of events now almost two years old. For instance, he recalled that Detective Conner was affiliated with the ATF, as well as other details from his custodial interrogation at the jail. During jury selection, Coxton provided his attorney a written voir dire question which the Court found very useful. Finally, Coxton has exhibited no difficulties following the in-court proceedings.

3

warning and waiver).² Most circuits apply a totality of the circumstances framework for analyzing the effect of delays between Miranda warnings and custodial statements. See United States v. Weekley, 130 F.3d 747, 750 (6th Cir.1997); Medeiros v. Shimoda, 889 F.2d 819, 824 (9th Cir.1989) cert. denied, 496 U.S. 938, 110 S.Ct. 3219, 110 L.Ed.2d 666 (1990); United States v. Vasquez, 889 F.Supp. 171 (M.D. Pa.1995); cf. Poyner v. Murray, 964 F.2d 1404, 1413-14 (4th Cir.)("Whether a waiver of the right to counsel was knowing and intelligent is determined by an examination of the totality of the circumstances surrounding the waiver). As noted by the Court in Vasquez,

> "whether a time lapse renders Miranda warnings "stale" may be reduced to answering two questions: (1) At the time the Miranda warnings were provided, did the defendant know and understand his rights? (2) Did anything occur between the warnings and the statement, whether the passage of time or other intervening event, which rendered the defendant unable to consider fully and properly the effect of an exercise or waiver of those rights before making a statement to law enforcement officers?"

Id. 889 F. Supp at 177.

Although Coxton testified at the instant hearing that he was never Mirandized on March 11, the weight of the evidence indicates Coxton was provided, knew and understood, and voluntarily waived his rights. Coxton acknowledged each right individually and agreed to talk with police without the assistance of counsel. There is no evidence that he was under the influence of drugs or alcohol at that time, or that he was incapable understanding the consequence of his waiver. Following his arrest, Coxten consented in writing to a search of his room at his mother's house and accompanied the police to his motel room.

---

² United States ex rel. Henne v. Fike, 563 F.2d 809, 814 (7th Cir.1977) (nine hours between warnings and waiver not too long), cert. denied, 434 U.S. 1072, 98 S.Ct. 1257, 55 L.Ed.2d 776 (1978); United States v. Andaverde, 64 F.3d 1305, 1312 (9th Cir.1995)(one-day interval between the Miranda warnings and waiver, and the defendant's subsequent statement to officers, did not render the statement inadmissible.); Biddy v. Diamond, 516 F.2d 118, 122 (5th Cir. 1975)(twelve-day lapse of time did not destroy effectiveness of original Miranda warnings when defendant as warned by same officers earlier and she later made a statement at her home).

Certainly, a significant amount of time passed between the Miranda warnings and Coxton's March 12, 2004 statements. Although the record suggests a time lapse of approximately twelve hours between the time Detective Conner Mirandized Coxton and the interview at the jail, this is shorter than the periods involved in Dela Pena (fifteen hours), Andaverde (24 hours), and Biddy (twelve-days). Further, the Court finds that beyond the passage of time there was no other relevant event that could have lessened the effectiveness of Coxton's Miranda waiver. There are no allegations of mistreatment, intimidation, or deprivation of sleep during the intervening detention at the jail, nor any reason to think that the circumstances in the interview room were particularly intimidating or coercive, or that promises of leniency were offered. Unlike the defendant in United States v. Jones, 147 F.Supp.2d 752 (E.D.Mich. 2001), which is cited by the Defendant, Coxton was questioned by the same Detective who previously had Mirandized him and about substantially the same offenses. And, unlike the officer in Jones, Detective Connor specifically reminded Coxton of his rights, including his right to remain silent. Coxton said he understood those rights, did not ask Detective Conner to repeat them, and offered to cooperate with the detectives. Furthermore, Coxton was familiar with the significance of his Miranda rights, having been acquainted with the justice system on previous occasions. See McFadden v. Garraghty, 820 F.2d 654, 661 (4th Cir. 1987); United States v. Cruz Jimenez, 894 F.2d 1, 8 (1st Cir.1990).

Certainly, the twelve hours period as well as the change of location between the Miranda warnings and the interrogation at the jail, are considerations that might counsel against finding an effective Miranda waiver during the March 12, 2005 custodial interrogation. Ultimately, however, these circumstances were not enough to impair Coxton's ability to "consider fully and properly the effect of an exercise or waiver of those rights before making a statement to law

5

enforcement officers." Vasquez, supra. Because Detective Conner inquired as to whether Coxton recalled his Miranda rights, albeit without repeating those rights in full, and because Coxton plainly remembered the warnings, and readily agreed to cooperate, the Court finds that Coxton's statement was made pursuant to an effective Miranda waiver, and should not be suppressed.

**THEREFORE, IT IS HEREBY ORDERED** that Defendant's motion to suppress is **DENIED**.

Signed: February 13, 2006

Robert J. Conrad, Jr.
United States District Judge